UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | BANKRUPTCY CASE NO. |
| GONZALO SALDANA, MEXIA | ) | |
| NURSERY & TREE FARM, INC., and | ) | 13-34861-SGJ-7 |
| MEXIA TIRE SERVICE, LLC, | ) | 13-34862-SGJ-7 |
| | ) | 13-34863-SGJ-7 |
| Debtors. | ) | |
| ------------------------------------------------------- | ) | |
| ORENSTEIN LAW GROUP, P.C., | ) | |
| | ) | CIVIL ACTION NO. |
| Appellant, | ) | |
| | ) | 3:15-CV-0362-G |
| VS. | ) | |
| | ) | CONSOLIDATED WITH |
| ESTELA SALDANA, | ) | 3:15-CV-0363-G |
| | ) | 3:15-CV-0364-G |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

Appellant and cross-appellee, Orenstein Law Group, P.C. ("OLG"), and

appellee and cross-appellant, Estela Saldana ("Estela"),[1] appeal from an order of the

United States Bankruptcy Court denying in part OLG's application for

---

[1] To avoid confusion, the court refers to both Estela Saldana and Gonzalo
Saldana by their first names.

compensation.  The court has jurisdiction to hear these appeals under 28 U.S.C.

§ 158(a).  For the reasons discussed below, the bankruptcy court's order regarding the

application for compensation is affirmed in part and remanded in part.

## I.  BACKGROUND

### A.  Factual Background

In December 2010, Gonzalo Saldana ("Gonzalo") filed for divorce from Estela.

Appellant's Brief at 5 (docket entry 19).  The parties eventually entered into a divorce

settlement agreement that awarded Estela $2.6 million.  *Id.*  Over two-and-a-half

years after this settlement, Gonzalo, Mexia Nursery, and Mexia Tire (collectively,

"the debtors") -- the latter two being businesses Gonzalo owned -- filed separate

voluntary Chapter 11 bankruptcy petitions.  *Id.* at 4.  The bankruptcy court jointly

administered the debtors' cases for procedural purposes during many of the

bankruptcy proceedings, but the cases were not substantively consolidated.  Record

on Appeal ("R.") 290-92 (docket entry 6).

On January 1, 2014, OLG commenced its representation of the debtors in their

Chapter 11 bankruptcy cases.  Appellee's Response to Appellant's Principal Brief and

Principal Brief in Cross-Appeal ("Appellee's Brief") at 4 (docket entry 20).  OLG

performed various services for the debtors until August 4, 2014, when the court

converted Gonzalo's and Mexia Tire's cases to Chapter 7 and appointed a Chapter 11

trustee in the Mexia Nursery case.  R. 850.  With its legal work complete, OLG filed an application for compensation with the bankruptcy court.  R. 93-183.

On December 22, 2014, the bankruptcy court held a hearing regarding OLG's application.  R. 855-928.  The bankruptcy court provided both OLG and Estela, who filed an objection to OLG's application, R. 184-92, an opportunity to present their arguments regarding the reasonableness of the fee application.  *See* R. 855-928.  At the conclusion of this hearing, the bankruptcy court granted OLG a portion of the fees requested.  R. 925-27.  Pertinent to the present appeal are the bankruptcy court's decisions to (1) deny OLG any compensation for its work regarding the adversary complaint the debtors filed against Estela, (2) grant OLG half of its requested compensation for its work opposing Estela's motions to convert, and (3) grant OLG all of its requested fees concerning its preparation and support of the debtors' Chapter 11 bankruptcy plan and disclosure statement.  R. 923-27; *see also* Appellant's Brief at 19-30; Appellee's Brief at 11-23.

## B.  Issues Raised on Appeal

Both OLG and Estela filed timely notices to appeal the bankruptcy court's order.  R. 1-4.  The court consolidated all three appeals after the necessary transfers.  Order to Consolidate (docket entry 17).  OLG appeals multiple issues that concern the award of attorney's fees in one or more of the three underlying bankruptcy cases:

1.   Did Estela have standing to object to and appeal the attorney's fees awarded in the Mexia Tire and Mexia Nursery cases?

2.   When ruling on OLG's application for compensation, did the bankruptcy court improperly interpret 11 U.S.C. § 330(a)(3)? Specifically, does the statute authorize consideration of legal fees earned by another law firm that were all incurred prior to OLG's participation in the case and some of which were incurred prior to the bankruptcy petitions?

3.   Did the bankruptcy court improperly evaluate OLG's application for compensation by using a retrospective standard, see *In re Pro-Snax Distributors, Inc.*, 157 F.3d 414, 426 (5th Cir. 1998), or did it use the prospective standard recently enunciated by the Fifth Circuit?  See *In re Woerner*, 783 F.3d 266, 273-76 (5th Cir. 2015) (en banc).

4.   Were the bankruptcy court's two factual conclusions listed below clearly erroneous?

   a.   The debtors' filing and prosecution of the adversary complaint against Estela was not (1) reasonably likely to benefit the debtors' estates or (2) necessary to the administration of the cases.

   b.   As of late June 2014, defending against Estela's motions to convert[2] was not (1) reasonably

---

[2]   The category labeled "motion to dismiss/convert" includes fees incurred

(continued...)

likely to benefit the debtors'
estates or (2) necessary to the
administration of the cases.

Appellant's Brief 1-3.

On cross-appeal, Estela presents four major issues:

1.     Did OLG have standing to object to and
appeal the attorney's fees awarded in the
Mexia Tire case?

2.     Should the bankruptcy court have denied all
of OLG's fees relating to Estela's motions to
convert because the bankruptcy court could
not timely confirm the debtors' proposed plan
to prevent conversion?

3.     Were these three bankruptcy cases filed to
improperly gain review of the divorce
settlement between Gonzalo and Estela, thus
rendering all three cases essentially a two-
party dispute?  And, if so, does this imply
that the bankruptcy court should have denied
all fees to OLG because none of its services
were (1) reasonably likely to benefit the
debtors' estates or (2) necessary to the
administration of the cases?

4.     Should the bankruptcy court have denied all
of OLG's fees relating to the debtors'
proposed plan and disclosure statement
because the bankruptcy court could not

---

[2](...continued)
defending against three separate motions to convert filed by Estela on January 3,
June 23, and July 24, 2014.  *See* R. 139-54; *see also* docket entries 85, 175, and 187 in
case number 13-34861-SGJ-7 before the Northern District of Texas Bankruptcy
Court.  The vast majority of fees were incurred following the June 23 motion.  *See* R.
141-54.

> timely confirm the debtors' proposed plan
> and, even if statutory time limits were not at
> issue, would Estela's lack of approval prevent
> the debtors from obtaining approval of a
> plan?

Appellee's Brief at 14-21; Appellant's Brief at 15-16; Appellee's Reply at 1-3 (docket entry 22).  Both parties filed two briefs in accordance with the court's briefing schedule.  Order (docket entry 18).  The appeal is now ripe for consideration.

## II.  ANALYSIS

### A.  Legal Principles

#### 1.  *Standards of Review*

The court reviews the bankruptcy court's award of attorney's fees for abuse of discretion.  *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005) (citations omitted).  "An abuse of discretion occurs where the bankruptcy court (1) applies an improper legal standard or follows improper procedures in calculating the fee award, or (2) rests its decision on findings of fact that are clearly erroneous.  *Id.* (citing *In re Evangeline Refining Company*, 890 F.2d 1312, 1325 (5th Cir. 1989)).  Thus, the court reviews "legal conclusions de novo and . . . findings of fact for clear error."  *Id.* (citations omitted).  When considering a mixed question of law and fact, the court considers the question de novo, but reviews the "underlying facts" for clear error.  *In re Green Hills Development Company, LLC*, 741 F.3d 651, 654-55 (5th Cir. 2014).

2. *Appellate Standing in Bankruptcy Cases*

District courts possess statutory authority to hear appeals from bankruptcy court "final judgments, orders, and decrees . . .." 28 U.S.C. § 158(a). "As Article III is inapplicable to bankruptcy courts, standing to appeal in a bankruptcy proceeding is derived originally from statute . . .." *Rohm & Hass Texas, Inc. v. Ortiz Brothers Insulation, Inc.*, 32 F.3d 205, 210 n.18 (5th Cir. 1994). Congress established the "person aggrieved" standard to govern bankruptcy appellate standing. 11 U.S.C. § 67(c) (repealed 1978). Despite the statute's eventual repeal, the "person aggrieved" standard "continues to govern standing" in bankruptcy cases. *In re Coho Energy Inc.*, 395 F.3d 198, 202 (5th Cir. 2004).

The "person aggrieved" standard is more rigorous than the standard for traditional Article III standing. See *In re Coho Energy Inc.*, 395 F.3d at 202-03 ("Because bankruptcy cases typically affect numerous parties, the 'person aggrieved' test demands a higher causal nexus between act and injury."). To facilitate the efficient administration of bankruptcy estates, the standard circumscribes litigation to those individuals directly affected by the bankruptcy court's proceedings. *In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir. 1987). An appellant must show that the bankruptcy court's order "directly and adversely affected" his pecuniary interest, *In re Fondiller*, 707 F.2d 441, 443 (9th Cir. 1983), by "diminish[ing] his property,

- 7 -

increas[ing] his burdens, or impair[ing] his rights." *In re El San Juan Hotel*, 809 F.2d at 154 (citation omitted).

For example, in *In re Coho Energy*, 395 F.3d at 203, the Fifth Circuit concluded that a law firm previously discharged by a Chapter 11 debtor was not a "person aggrieved" by the bankruptcy court's order approving an attorney's fees settlement between the debtor and a successor firm. The discharged firm alleged that its claim for attorney's fees, which had no ceiling given accruing interest, could possibly exceed the amount in the court's registry. *Id.* at 203. However, after subtracting the settlement amount and the debtor's shareholders' share, $4.5 million remained to pay the discharged firm's estimated $3.4 million plus interest. *Id.* According to the Fifth Circuit, the discharged firm's interest in the settlement agreement was "improbable" in light of the nearly one million dollars of excess funds to cover accruing interest. *Id.* This "remote possibility" of possessing a financial interest was insufficient to satisfy the "person aggrieved" test. *Id.*

### 3.  *Compensation of Attorneys in a Chapter 11 Proceeding*

A bankruptcy court can grant a Chapter 11 debtor-in-possession permission to employ attorneys to "assist . . . with the reorganization of the bankruptcy estate." *In re Woerner*, 783 F.3d at 271 (citing 11 U.S.C. § 327). After court-approved attorneys complete their work, they can request "reasonable compensation for actual, necessary

services rendered" and "reimbursement for actual, necessary expenses." 11 U.S.C.
§ 330(a)(1).

To determine whether an amount is reasonable, "the court shall consider the
nature, the extent, and the value of such services, taking into account all relevant
factors . . .." *Id.* § 330(a)(3). Among other things, a court can consider "the time
spent on such services," "the rates charged for such services," and "whether the
services were necessary to the administration of, or beneficial at the time at which the
service was rendered toward the completion of, a case . . .." *Id.*

In a recent opinion, the Fifth Circuit read the last of the above listed
considerations together with the statutory prohibition of compensation for services
*not* "reasonably likely to benefit the debtor's estate," *id.* § 330(a)(4)(A)(ii), to
conclude that courts must assess the reasonability of services prospectively. *In re
Woerner*, 783 F.3d at 273-77 (discussing Section 330's statutory text, legislative
history, and other circuits' interpretations to justify jettisoning the former
retrospective standard of *In re Pro-Snax*). "Under this framework, if a fee applicant
establishes that its services were 'necessary to the administration' of a bankruptcy
case or 'reasonably likely to benefit' the bankruptcy estate 'at the time at which [they
were] rendered,' *see* 11 U.S.C. § 330(a)(3)(C), (4)(A), then the services are
compensable." *Id.* at 276 (alteration in original). The Fifth Circuit emphasized,
however, that this framework does not "limit courts' broad discretion to award or

- 9 -

curtail attorney's fees under § 330, 'taking into account all relevant factors,' 11
U.S.C. § 330(a)(3)." *Id.* at 277.

B.  <u>Application</u>

1.  *Standing Analysis*

a.  Estela Possesses Standing in the Mexia Nursery Case

Estela qualifies as a "person aggrieved" by the bankruptcy court's award of
attorney's fees in the Mexia Nursery case.  Any assets remaining in the Mexia Nursery
estate will flow to Gonzalo as the sole owner of Mexia Nursery stock.  R. 219.
Gonzalo's present assets are insufficient to pay Estela's claim in full; consequently,
assets that reach Gonzalo's estate following Mexia Nursery's liquidation will reduce
Estela's claim.  R. 211, 226.  Any money OLG receives as attorney's fees from Mexia
Nursery, however, will reduce the amount available to satisfy Estela's claim.  As
opposed to a "remote possibility" of the bankruptcy court's order affecting Estela's
interests, *In re Coho Energy*, 395 F.3d at 203, any attorney's fees the bankruptcy court
awards in the Mexia Nursery case diminishes Estela's recovery and thus qualifies her
as a "person aggrieved."

b.  Estela Lacks Standing but OLG Possesses<br>Standing in the Mexia Tire Case

Due to the paucity of assets in the Mexia Tire estate, *see* Appellant's Brief at
15; Appellee's Reply at 2, both parties rely on the possible disgorgement of
approximately $106,000 Estela received from the sale of a parcel of real property in

- 10 -

the Mexia Tire estate.  *See* R. 394-96; 732-33.  OLG claims that if the state court

finds Estela guilty of fraud, *see* R. 863-64, she may have to send the money back to

the Mexia Tire estate.[3]  Appellant's Brief at 16.  In this event, Mexia Tire would

possess funds to pay OLG's attorney's fees.  *Id.*  It is improper for this court to

conduct a merits-based assessment of Gonzalo's state court claims.  The court

therefore concludes that OLG possesses greater than a "remote possibility" of

recovering attorney's fees from Mexia Tire's estate, *In re Coho Energy*, 395 F.3d at 203,

and consequently has standing to appeal the bankruptcy court's decision in the Mexia

Tire case.

      In contrast, Estela lacks standing to appeal in the Mexia Tire case. Estela

undoubtedly has a pecuniary interest in the possibility of disgorgement.  However,

this does not establish her interest in amount of attorney's fees awarded to OLG in

the Mexia Tire case.  If the state court orders the disgorgement of funds, it will have

concluded Estela engaged in fraudulent activity.  *See* R. 403-10.  Such conduct would

undermine Estela's claim to any assets in Gonzalo's estate that flowed from the Mexia

---

[3]     After dismissing all of the claims in the adversary proceeding against
Estela, the bankruptcy court lifted the bankruptcy stay, allowing Gonzalo to advance
his fraudulent transfer theories against Estela in state court.  *See* R. 862-64.

Tire estate.[4]  Because Estela's interest in the Mexia Tire attorney's fees award is "improbable," she lacks standing to appeal.  *In re Coho Energy*, 395 F.3d at 203.

### 2.  *The Bankruptcy Court Applied a Prospective Analysis Under 11 U.S.C. § 330*

The bankruptcy court noted the "staggering" amount of attorney's fees accumulated across the three cases in light of, among other things, "the overall results while in Chapter 11."  R. 924.  This statement, according to OLG, indicates that the bankruptcy court "erroneously applied an after-the-fact, results based analysis" when assessing the application for compensation.  Appellant's Brief at 27.  This lone statement, however, occurred before the bankruptcy court's ultimate determination of the appropriate compensation in these cases.  *See* R. 924-27.  After considering the statements the bankruptcy court made contemporaneously with its ruling on OLG's application for compensation, the court is confident the bankruptcy court applied the correct prospective standard.  *See, e.g.*, R. 925-26 ("[B]y the time the second motion to dismiss or convert was filed in late June of 2014, it was obvious *at that point* that a reorganization was not in prospect . . ."; "By that point, the bar date, the deadline for proofs of claim had occurred, all of the proofs of claim were in, and it was clear to all

---

[4]      This is the key distinction between Estela's arguments for standing in the Mexia Tire and Mexia Nursery cases.  Assets will flow from the Mexia Nursery estate to Gonzalo's estate regardless of the state court proceeding.  However, the Mexia Tire estate will only possess leftover assets that will flow to Gonzalo's estate if Gonzalo succeeds in his state court action.  To succeed in state court, Gonzalo must demonstrate that Estela engaged in fraudulent conduct.  If proven, this fraudulent conduct would render Estela's likelihood of recovery from Gonzalo's estate uncertain.

*at that point* that a Chapter 11 plan just no longer was reasonable, made sense"; "*At*

*that point in time*, I cannot find it was ever reasonably likely to benefit the estate or

administration of the case.") (emphasis added).

3.  *Section 330 Authorizes a Bankruptcy Court to Consider Legal
Fees Incurred by Another Law Firm Both Prior to
and During the Bankruptcy Case*

As indicated above, Section 330(a)(3) instructs a bankruptcy court to take

"into account all relevant factors" when analyzing an application for compensation.

The bankruptcy court noted that another law firm incurred approximately $47,000 of

fees in preparation for the bankruptcy filings and another $58,000 of fees during the

early stages of the bankruptcy proceedings before OLG assumed the role of counsel.

R. 924.  Combined with OLG's requested legal fees, these fees produce an aggregate

total of approximately $230,000.  *Id.*  In the bankruptcy court's judgment, these fees

were "somewhat staggering given the number of creditors [and] the size of creditor

claims . . .." *Id.*

OLG criticizes the bankruptcy court's consideration of fees earned by another

law firm by noting that "[n]one of these factors or assumptions upon which the

Bankruptcy Court premised its analysis under 11 U.S.C. § 330(a)(3) is even

mentioned under the language of the statute."  Appellant's Brief at 28.  However, the

statute's text "indicates that its list of factors is not exclusive: bankruptcy courts may

consider 'all relevant factors,' including factors not specified in the statute."  *In re*

- 13 -

*Pilgrim's Pride Corporation*, 690 F.3d 650, 665 (5th Cir. 2012) (citations omitted).

The total amount of attorney's fees incurred in preparation for and during a

bankruptcy case is certainly a relevant factor for bankruptcy courts to consider under

Section 330, especially when this total appears excessive given the complexity or size

of the bankruptcy proceeding.

### 4. *The Bankruptcy Court's Factual Conclusion Regarding the Adversary Complaint Was Not Clearly Erroneous*

The bankruptcy court discussed the claims registers in each of the three cases

to support its conclusion that the April 2014 adversary complaint, R. 1556-71, was

not reasonably likely to benefit the debtors' estates or necessary to the administration

of the cases.  OLG admits that "by some point in fall of 2013, it would have been

generally understood [that Estela] was not asserting a lien in . . . the tree inventory"

of Mexia Nursery.  R. 903.  With only $82,045.35 in unsecured claims, R. 1377-78,

the proceeds from the sale of the tree inventory would clearly pay all unsecured

claims.  R. 903-07; Mexia Nursery ("MN") R. 385 (noting that the tree inventory

sold for a total of $671,153.92) (docket entry 8, case 3:15-CV-0363-G); *see also* R.

990 (indicating that as of May 31, 2013 the tree inventory was worth over

$2,000,000 "in ordinary course of business and not bulk sales").  With respect to the

Mexia Tire and Gonzalo cases, creditors filed a total of $4,325.35 in unsecured

claims.  R. 1371-76, 1380.  The $17,595.00 in fees incurred while prosecuting the

adversary complaint appear excessive given this small amount of unsecured claims

and support the inference that "only Gonzalo Saldana personally was benefitting." R. 926. The near certainty that Mexia Nursery's unsecured creditors would be paid in full combined with the inordinate amount of legal fees relative to the amount of unsecured claims in the Mexia Tire and Gonzalo cases support the bankruptcy court's conclusion.

5. *The Bankruptcy Court's Factual Conclusion Regarding the Motion to Dismiss/Convert Category of Fees Was Not Clearly Erroneous*

The bankruptcy court indicated its concern whether various time limits would prevent it from confirming any proposed plan. *See* R. 830-39. Specifically, the amended scheduling order listed June 2, 2014 as the deadline to file a plan and disclosure statement and July 17, 2014 as the deadline to confirm the plan. R. 2081. The debtors filed their joint plan and disclosure statement on time. *See* R. 413-492. However, the plan was not confirmed by July 17, and the debtors did not file a motion to extend both the scheduling order's deadline and the statutory deadline for approving a plan following its initial filing. 11 U.S.C. § 1129(e) ("In a small business case, the court shall confirm a plan . . . not later than 45 days after the plan is filed unless the time for confirmation is extended in accordance with section 1121(e)(3).")

Moreover, as of June 23, 2014 -- the date Estela filed the relevant motion to convert -- the debtors had not set a hearing for consideration of the disclosure statement. With only twenty-four days remaining until the July 17th confirmation deadline, the debtors were incapable of providing the necessary twenty-eight days'

notice before creditors' consideration of a disclosure statement or plan.  FED. R. BANKR. P. 2002(b).

Following these two relevant dates (*i.e.*, June 23 and July 17), a significant portion of the fees sought by OLG was incurred.  *See* R. 141-154.  The "context of the case in June, July and August 2014," as detailed above, supports the bankruptcy court's conclusion that "it was not reasonable to be incurring this high level of fees," with the resulting reduction of the fees by fifty percent.  R. 926.

###### 6.   *The Bankruptcy Court Had Authority to Award OLG Fifty-Percent of the Fees in the Motion to Dismiss/Convert Category*[5]

Section 330(a)(3)(C) authorizes compensation for fees that are "necessary to the administration of" a Chapter 11 case.  The bankruptcy court made a factual determination that some of the discovery material[6] OLG secured "could have been useful to the overall case administration," R. 925, even though the debtors were likely unable to defeat Estela's motion to convert.  *See supra* at 15.  While the bankruptcy court used the word "useful" rather than "necessary," the court cannot conclude that awarding fifty-percent of OLG's fees in this category was clearly erroneous.  See *In re*

---

[5]   Given the standing analysis above, Estela's appeal pertains only to the attorney's fees awarded in the Gonzalo and Mexia Nursery cases.  See *supra* at 10-11.

[6]   Expenses expended on discovery comprise a large portion of fees in this category.  The discovery-related fees following the June 23, 2014 motion to convert totaled $26,600.  *See* R. 142-45.  Combined with the $3,100 in fees incurred responding to Estela's first motion to convert, R. 139-40, this totals $29,700 -- an amount quite close to the $30,578 in fees awarded by the bankruptcy court in this category.  R. 926.

*Green Hills Development Company, LLC*, 741 F.3d at 654-55 (noting that a court

reviews the "underlying facts" in a mixed question for clear error).

Following Estela's third motion to convert, the bankruptcy court converted

both the Gonzalo and Mexia Tire cases to Chapter 7.  R. 529-30; Mexia Tire R. 234-

35 (docket entry 9, case 3:15-CV-0364-G).  Mexia Nursery continued to operate

under the oversight of a Chapter 11 Trustee until the business was ultimately

liquidated under Chapter 7.  MN 25, 247-48.  The discovery material, specifically the

depositions of Richard Sadler -- the debtors' accountant -- and Gonzalo, provided the

appointed trustees pertinent information such as "funds flow" on their respective

cases, R. 925, and also delivered insight on the interrelatedness of the three cases.

This court cannot conclude that finding such information "necessary to the

administration of" these cases was clearly erroneous.[7]  § 330(a)(3)(C).

---

[7]    The Fifth Circuit's *In re Woerner* decision does not require a different
result.  *See* 783 F.3d at 273-76.  Bankruptcy courts can consider "whether the services
were necessary to the administration of, *or* beneficial at the time at which the service
was rendered toward the completion of, a case under this title."  § 330(a)(3)(C)
(emphasis added).  The *In re Woerner* court focused on the portion of this statutory
provision following the "or."  783 F.3d at 273.  Specifically, the Fifth Circuit
concluded that when assessing whether services are "reasonably likely to benefit the
debtor's estate," § 330(a)(4)(A)(ii)(I), a bankruptcy court must follow the instruction
of Section 330(a)(3)(C) and look to the "time at which the service was rendered . . .."
783 F.3d at 273-74.  However, the statute authorizes a bankruptcy court to award
fees that are "necessary to the administration of . . . a case," § 330(a)(3)(C), even if
the fees were incurred as the result of a poor choice.  While OLG's defending against
the motions to convert may have been ill-advised, the bankruptcy court concluded
some of the fees related to work that was necessary to administration of the
bankruptcy cases and thus was compensable.

> 7. *Estela Waived the Right to Appeal Her Claim that the Bankruptcy*
> *Cases Were Primarily a Two-Party Dispute Through Which*
> *Gonzalo Sought to Secure Review of the Divorce Decree*

Estela failed to raise this issue in her objection to the final fee application.  *See* R. 184-92.  Moreover, Estela failed to raise the issue during the bankruptcy court's hearing on the fee application.[8]  *See* R. 865-928.  As the issue was not presented to the bankruptcy court, this court declines to consider it.

> 8. *Remand of the Mexia Nursery and Gonzalo Cases to the Bankruptcy*
> *Court to Determine Whether Fees Awarded in the Proposed Plan*
> *and Disclosure Statement Category Should be Reduced*

As noted above, the bankruptcy court reached the conclusion that any fees defending against Estela's June 23, 2014 motion to convert were not reasonably likely to benefit the debtors' estates.[9]  See *supra* at 15-16.  This conclusion relied on, *inter alia*, the debtors' inability to satisfy the requirement of twenty-eight days' notice before a disclosure statement or proposed plan could be considered.  FED. R. BANKR. P. 2002(b).  The bankruptcy court provided no insight why any of the fees in the "plan and disclosure statement" category, *see* R. 155-162, following June 19, 2014

---

[8]    The closest Estela came to raising the issue during the hearing was when she noted that "she is the only beneficiary in this estate . . .."  R. 922.  However, this lone reference fails to properly present the issue to the bankruptcy court.  Moreover, even if Estela had properly raised the issue, she failed to inform the bankruptcy court how the issue should influence its legal analysis of OLG's application for compensation.

[9]    However, the bankruptcy court concluded that half of these fees were compensable because they were necessary to the administration of the estates.

(*i.e.*, twenty-eight days preceding the July 17, 2014 deadline to confirm a plan) should be allowed if the debtors were incapable of confirming a plan as of this date. Moreover, even if the bankruptcy court could have reduced the twenty-eight day requirement listed in the rules, it failed to explain why it awarded any fees incurred after July 17, 2014 -- the deadline both listed in the scheduling order and resulting from 11 U.S.C. § 1129(e) for confirming a plan. *See* R. 162, 2081.

On remand, the bankruptcy court should consider how the above issues affect the fees awarded in the "plan and disclosure statement" category *in the Mexia Nursery and Gonzalo cases*.[10] R. 155-62. This court's decision to remand does not imply that the bankruptcy court should reduce any, or all, of the attorney's fees in this category. Rather, the bankruptcy court should explain why OLG's services are -- or are not -- compensable by discussing either their necessity to the administration of the cases or their benefit to the cases at the time the fees were incurred. *See* § 330(a)(3)(C). If the bankruptcy court concludes the fees are compensable because they were "beneficial at the time at which" the services were performed, it should address Estela's argument regarding the impossibility of reaching a consensual plan with Estela and the absolute priority rule. *See* R. 892-93; Appellee's Brief at 20-21.

---

[10]    See *supra* note 5.

III.  <u>CONCLUSION</u>

For the reasons discussed above, the bankruptcy court's order regarding OLG's application for attorney's fees is **AFFIRMED** in part and **REMANDED** in part.

**SO ORDERED**.

July 20, 2015.

A. JOE FISH
**Senior United States District Judge**